

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

MEF
F. #2021R00288

*610 Federal Plaza
Central Islip, New York 11722*

November 10, 2022

By ECF

Honorable Joanna Seybert
United States District Judge
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. David Corwin
                Criminal Docket No. 21-218 (JS)

Dear Judge Seybert,

      The government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for November 18, 2022 at 2:00 p.m., and in response to the defendant's October 27, 2022 sentencing submission (hereinafter "Def. Mem."). On March 7, 2022, the defendant pled guilty pursuant to a plea agreement to Count One of a two-count indictment, which charged the defendant with the receipt of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2). For the reasons stated below, the government respectfully submits that a sentence of 60 months' custody is reasonable and appropriate in this case.

    I.    Background

      The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR"), to which the government has no objection.

        A.    The Initial Lead and Investigation

      In or around August 2019, the Federal Bureau of Investigation received information from a foreign law enforcement agency regarding an internet user, who, on or about April 27, 2019, utilized a particular IP address to access a website on the dark web that was called "Hurt Meh." PSR at ¶ 3. This site is known by law enforcement to host child pornography. The FBI investigation revealed that the referenced IP address was registered to the defendant at his residence in Greenport (the "Residence"). Id.

On March 18, 2021, FBI agents went to the Residence to investigate the aforementioned information. The defendant was informed of the general nature of the investigation, and he admitted that he was the sole occupant and user of the internet at the Residence. Id. at ¶ 4. The defendant also showed the FBI his various computers, which he referred to as "stations," and admitted that he used these computers to access the dark web and engage in anonymous web browsing. Id. After the defendant gave the FBI consent to search a computer in his living room, the defendant showed the FBI agents how he navigated to a website through which he obtained child pornography. Id. at ¶ 5. After the agent requested consent to perform an onsite analysis of the computer, the defendant asked if he could delete several folders, which the FBI did not permit him to do. Id.

Additionally, on the same date, the defendant, showed the FBI another computer, which was in his bedroom, and which had a monitor that extended over his bed. Id. at ¶ 6. Upon entering the bedroom, the defendant moved the mouse on his bed to wake up the computer; when the defendant did that, the agent could see that the screen displayed the same dark web browser and chat room that was previously visible on the laptop downstairs. Id. Thereafter, with the defendant's permission, the agent navigated to three additional tabs that were already opened in his browser, each of which appeared to contain sexually explicit images of minors. Id. Specifically, the children pictured in the still images on each of these tabs appeared to be prepubescent females, between the approximate ages of five and six. Id. The images appeared to be chronological series where the minor females were nude and displaying their genitals. Id.

Thereafter, the agents asked for and received permission to search the defendant's home for electronic devices and computers. Id. at ¶ 7. As part of this, the agents went to the defendant's office, where there was another desktop computer. When the defendant moved the mouse to wake up that computer, the agents could see that the screen displayed the "Inmate Locator" function on the Bureau of Prisons Website, which was populated to search for "Bart Huskey." At the time, the defendant stated in sum and substance that Huskey was infamous in his world. Subsequent investigation revealed that in 2008, James Bartholomew Huskey was prosecuted by the Northern District of Georgia for the manufacture, distribution and possession of child pornography. (No. 8-CR-33(RLV)). In particular, Huskey is infamous for violently sexually abusing his daughter—when she was between 6 and 9 years old—recording and then distributing these images. Id. The victim of that abuse is referred to as "Tara" by the National Center for Missing and Exploited Children ("NCMEC"). A subsequent analysis of the computer in the defendant's bedroom revealed 39 images from the Tara series. Id. Additionally, on one of the defendant's bulletin boards was a post-it with Tara's true mailing address, which is not public. Id.

While the FBI conducted the search of the defendant's home, the defendant did not permit agents to search outside of the defendant's presence. Id. at 8. Additionally, the defendant did not allow the agents to enter a room upstairs that had a glowing red light coming from underneath the door and emitted an odor of marijuana. Id. The FBI ultimately took at least six computers and electronic devices from the Residence.

B. Subsequent Search of Defendant's Computers

A subsequent search of the defendant's computers revealed that the defendant possessed more than 1,900 images and 12 videos depicting child pornography. Id. at ¶ 10. Because many of the defendant's devices were encrypted, however, the FBI was not able to ascertain the full scope of the defendant's likely child pornography collection. This search also revealed that the defendant was using peer-to-peer filesharing networks to receive and distribute child pornography, and the files that he possessed include ones depicting sadomasochism and the sexual abuse of toddlers. Id.

C. The Defendant's Arrest and Indictment

On March 24, 2021, the defendant was arrested at his home. Id. at ¶ 13. At the time, the FBI executed a search warrant, which revealed that the defendant was in fact growing marijuana in his home. On that same date, the defendant was arraigned on a complaint. ECF No. 6.

On April 20, 2022, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of receiving child pornography, in violation of Title 18, United States Code, Section 2252(a)(2), and one count of possessing child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B) (the "Indictment").

D. The Defendant's Post-Arrest Conduct

At the time of the defendant's arrest, it became apparent that he had a substantial substance abuse problem, and that he was self-medicating with Valium, which he obtained on the internet. After the defendant's arrest, he apparently weaned himself from this substance. PSR at ¶ 55. More recently, Pretrial Services filed a violation memorandum in which it reported to the Court that the defendant had violated the conditions of release in several ways. Most notable here, the defendant used his computer to view an image of a minor boy, undressed from the waist down, with his bottom exposed. Nov. 7. Violation Memorandum at 2.

II. Guidelines Calculation

The Probation Department calculated the United States Sentencing Guidelines (the "Guidelines" or U.S.S.G.") range for the defendant as follows:

| | | |
|---|---|---:|
| | Base Offense Level (§ 2G2.2(b)(2)) | 22 |
| Plus: | Material involves prepubescent minors (§ 2G2.2(b)(2)) | +2 |
| Plus: | Defendant allowed files to be downloaded on peer-to-peer filesharing network (§ 2G2.2(b)(3)) | +2 |

3

| | | |
|---|---|---:|
| Plus: | Material portrays sadism/masochism, violence and the sexual abuse/exploitation of infants and toddlers (§ 2G2.2(b)(4)(A) and (B)) | +4 |
| Plus: | Offense involved use of a computer ((§ 2G2.2(b)(6)) | +2 |
| Plus: | Possession of more than 600 images (§ 2G2.2(b)(7)) | +5 |
| Less: | Acceptance of responsibility | -3 |
| Total: | | <u>34</u> |

Id. at ¶¶ 20-33.  This calculation is slightly different than the one in the Plea Agreement because the parties did not include the adjustment pursuant to U.S.S.G. § 2G2.2(b)(3), and instead included a downward adjustment, pursuant to U.S.S.G. § 2G2.2(b)(1).  Because the defendant is in within Criminal History Category I, the applicable Guidelines Range as calculated by the Probation Department is 151 to 188 months.  Id. at ¶ 84.  In contrast, the parties stipulated in the Plea Agreement that the applicable Guidelines range is 97 to 120 months' incarceration.  The mandatory minimum term of imprisonment is five years.  See 18 U.S.C. § 2252(b).

   III.   Appropriate Sentence

The government respectfully requests that the Court impose a sentence of 60 months' incarceration, which is below the Guidelines in this case and consistent with the recommendation of the Probation Department.  The nature of the offense to which the defendant has pleaded guilty, the need for deterrence, and the defendant's history and characteristics all warrant a significant term of imprisonment such as this.  See 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

Child pornography crimes represent the continuing victimization of the children depicted in these images, which are in essence, crime scene images.  Possession of videos and images of abuse, alone, fosters a market for more abuse.  See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens.  Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008).  "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber,

4

458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, Osborne v. Ohio, 495 U.S. 103, 110 (1990).

Here, the defendant was found to be in possession of a large quantity of child pornography images. These images depict the rape and sexual abuse of children, toddlers and infants, i.e., it is not in any way borderline. It defies reason that the defendant could amass such a substantial collection of violent material without engaging in a prolonged effort to obtain it.

This evidence is corroborated by the defendant's own statements to the FBI when he was first approached, in which he admitted that inter alia he sought out, obtained and viewed child pornography. Importantly, as part of his psychological evaluations, the defendant admitted to masturbating to child pornography, which clearly evidences a sexual attraction to children. PSR at ¶ 63; see also Def. Mem. at 26. Moreover, very recently, the defendant viewed a partially nude image of a child, indicating his ongoing desire to obtain and view such material. Thus, it is clear that the defendant not only has a persistent and intense desire for the material that he successfully obtained, but also that he contributed to the demand for such material by obtaining such large quantities of it.

Thus, the "nature and circumstances of the offense" and the "history and characteristics" of the defendant warrant a substantial incarceral sentence consistent with the government's recommendation, pursuant to § 3553(a)(l).

The Court must also consider the factors set forth in § 3553(a)(2)(A)-(C), which provide that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). These factors also weigh in favor of a sentence of 60 months' custody.

First, with respect to factor § 3553(a)(2)(A), for the reasons set forth above, the trafficking of child pornography is a serious offense and a scourge on the most vulnerable of our society, and thus it needs to be adjudicated in a manner that will promote respect for the law and provide just punishment for the offense. Second, in regard to factor § 3553(a)(2)(B), affording adequate deterrence to criminal conduct, the defendant is one of countless individuals that continue to trade such violent exploitative material, which depicts the most destructive type of child abuse. A substantial sentence is therefore necessary to discourage other individuals who continue to consume such material and drive the demand for child abuse materials.

Third, pursuant to § 3553(a)(2)(C), it is essential that the Court's sentence "protect the public from further crimes of the defendant." As set forth above, the defendant continues to desire child pornography material, and he should be discouraged from continue to trade it.

5

IV.     Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 60 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

                                                Respectfully submitted,

                                                BREON PEACE
                                                United States Attorney

                                        By:     /s/
                                                Megan E. Farrell
                                                Assistant U.S. Attorney
                                                (631) 715-7862

cc:     Counsel for the defendant, by ECF
        U.S. Probation Officer Gregory Giblin